## Jackson et al. v. Sarajean Building and Loan Ass'n et al.

*Orr, Hall & Williams,* for plaintiffs.

*Wolf, Block, Schorr & Solis-Cohen,* for defendants.

KUN, J., March 14, 1930.—In the year 1810, one Benjamin Johnson, owner in fee of a tract of land situate between Sansom Street and Chestnut Street, at Twentieth Street, extending westward to what is now the east line of No. 2027 Sansom Street (property of the defendants), divided it into lots fronting on Sansom Street and on Chestnut Street, creating an alley between the rear of the lots extending from Twentieth Street westwardly to the west line of his property (being the east line of what is now No. 2027 Sansom Street), naming it Linton Place (now Ionic Street), and designated said alley as a boundary of the respective lots, reserving to each grantee "the free and common use of said alley."

Complainants derive their title by successive conveyances from the said Johnson. One of them, however, Thomas B. Monaghan, has a deed to a lot described as fronting on Ionic Street, without any reference to the use of any alley. According to the proofs, prior to about four years ago, when the predecessors of defendants built a public garage at No. 2027 Sansom Street, there had been no use or any claim on the part of the owners of that property to make any use of the alley in question, which is a *cul-de-sac* running, as stated, from Twentieth Street west to the east line of defendants' property. A solid wooden fence had existed on that line for many years and the predecessors of defendants had their own alley in the rear of their property, the outlet of which, however, was at a point west, there being no communication between that alley and the alley or street in question. About four years ago, the predecessors of defendants built their present garage and did not provide for any ingress or egress through their east wall to the west end of the *cul-de-sac* in question. However, two or three months ago, defendants broke through their east wall at the point mentioned and began to use the alley as a means of ingress and egress for their garage, which action brought about the filing of the bill in this case to restrain the defendants from continuing to do so and for a final decree eventually to make them fill up the opening in their wall.

The proofs show the defendants had written notice of the claims of complainants in the matter, and were asked not to proceed with their work. If

the defendants believed that the status of the alley, which had apparently existed for over 100 years, had in fact and in law changed, it was their duty, under the circumstances, to file a bill against the complainants and others interested to restrain them from interfering with their alleged right to make an opening in their east wall and to use the alley or street as a public street, and affirmatively prove their right. Instead of that, the defendants proceeded to change a long prior existing status, and complainants seeking to have them restrained by a preliminary injunction, defendants advance the argument that since the purpose of a preliminary injunction is to maintain a *status quo*, and the present *status quo* being the actual use by the defendants of the alley in question, that ought not to be disturbed.

A party cannot, however, by an alleged wrong violate the rights of another after notice and then have the changed *status quo* preserved for his benefit. As stated in Fredericks *v.* Huber, 180 Pa. 572, the *status quo* which will be preserved by a preliminary injunction is the "last actual peaceable, non-contested status which preceded the pending controversy."

There are some strong points in this case favoring the contention of the defendants that the alley in question has assumed the aspect or status of a public street, but the contention of the defendants in that regard is not free from grave doubt. True it is, that a street may become a public street without formal dedication of it as such. Notwithstanding the original deed creating the alley did not merely name it as a boundary, which would have amounted to a dedication of it to public use (Maier *v.* Walborn, 84 Pa. Superior Ct. 522), but added the words "reserving to each grantee the free and common use of said alley," negativing any intention to dedicate it as a public street (Ulrich *v.* Grimes, 94 Pa. Superior Ct. 313), such an alley or street, though a *cul-de-sac*, may by actual user become in the course of time a public street, but the evidence would have to be considerably stronger than that which has been presented thus far on behalf of the defendants to warrant such a conclusion.

That there is a city electric lamp and a city fire-plug in the alley or street, and that a public sewer and water-main and pipes have been laid in the street, are important factors no doubt, but are not conclusive. (Gowen *v.* Philadelphia Exchange Co., 5 W. & S. 141.) Likewise, the facts that one of the abutters had conveyed the rear end of his lot to another, who built thereon, making the alley or street his front, and that property is assessed for taxation as being on the alley or street, and that the City placed on the building at the entrance of the alley the name-plate "Ionic Street," can hardly change the legal status of the alley or street. No act of any abutter could possibly affect the rights of the others. The acts of the public, however, acquiesced in by the abutters might work a change. The real test is public user. Of course, in the case of a *cul-de-sac*, it would apparently be more difficult to show public user, because, ordinarily, the only persons using such a street would be the visitors to, or persons having business with, the abutters (Seidler *v.* Waln, 266 Pa. 361) ; although the mere fact that a street is a *cul-de-sac* does not exclude the possibility that it may be a public street under proper circumstances. Smith *v.* Union Switch and Signal Co., 17 Pa. Superior Ct. 444; Maier *v.* Walborn, *supra*, in both of which cases the courts held there had been a dedication of the alley involved to public use, in which they differ from the instant case. It is conceded that there was no dedication of the alley in question to public use in the first instance; as, indeed, it must be because the original grant to the abutters was not to the alley as a boundary merely, but expressly for their "common use," which, as has been pointed out, expressly negatives any inten-

tion to dedicate the alley for public use. Kirkham *v.* Sharp, 1 Wharton, 323, cited in Ulrich *v.* Grimes, *supra*, to the same effect. The defendants have not as yet satisfied the court that the status of the alley has changed.

The complainants, excepting Monaghan, are entitled to a preliminary injunction against defendants, as prayed for in the bill. A decree may be submitted.